**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>Christopher G. Shank,<br><br>    Debtor,<br>_____<br><br>Christopher G. Shank,<br><br>    Appellant,<br><br>vs.<br><br>American Education Services/SLFC-LAW,<br><br>    Appellee.<br>_____ | No. CV-05-3655-PHX-FJM<br><br>**ORDER** |

The court has before it debtor's opening brief (doc. 9), American Education Services' (AES) answering brief (doc. 14), and debtor's reply brief (doc. 20). For the reasons set forth below, we affirm the judgment of the bankruptcy court.

**I**

Debtor has a chemistry degree from Northern Arizona University, a law degree from the University of Arizona, and was admitted to the practice of law in 1993. He served as a prosecutor until a June 2000 felony conviction for sexual conduct with a minor and sexual exploitation of a minor led to his disbarment. He served one year in jail, was fined $17,000, and was placed on lifetime probation. On September 5, 2003, debtor filed a Chapter 13

1 petition for bankruptcy, listing as part of his debt a student loan owed to AES. On November
2 14, 2004, debtor instituted an adversary proceeding seeking discharge of his student loan
3 debt under the "undue hardship" provision of 11 U.S.C. § 523(a)(8). The bankruptcy court
4 denied relief, declaring the student loan nondischargeable. Debtor now appeals that
5 determination.

6 The student loan note at issue is a consolidation of all of debtor's educational loans,
7 executed on November 16, 1994, in the principal amount of $30,670.49, with an interest rate
8 of 8% per annum. As of the bankruptcy filing date, debtor owed approximately $34,000[1] on
9 the student loan. During the pendency of the Plan, AES will receive some payment as a
10 general, unsecured creditor, Bankr. Order at 10, and following completion of the Plan the
11 unpaid balance will be amortized over 10 years, with a monthly payment of approximately
12 $574.41. AES Brief at 13.

## II

14 A government guaranteed student loan cannot be discharged in bankruptcy unless
15 "excepting such debt from discharge . . . would impose an undue hardship on the debtor and
16 the debtor's dependents." 11 U.S.C. § 523(a)(8). In order to prove undue hardship, a debtor
17 must show that the debtor (1) cannot maintain, based on current income and expenses, a
18 "minimal" standard of living if forced to repay the loan; (2) that additional circumstances
19 exist indicating that this state of affairs is likely to persist for a significant portion of the
20 repayment period; and (3) that he has made good faith efforts to repay the loan. United
21 Student Aid Funds, Inc. v. Pena (In re Pena), 155 F.3d 1108, 1111 (9th Cir. 1998) (citing In
22 re Brunner, 46 B.R. 752, 756 (S.D.N.Y. 1985), aff'd, 831 F.2d 395 (2d Cir. 1987)) (the
23 "Brunner test"). The burden of proving undue hardship is on the debtor, who must establish
24 all three elements before discharge will be granted. Rifino v. United States (In re Rifino),
25 245 F.3d 1083, 1088-89 (9th Cir. 2001). The bankruptcy court in the instant case found that

---

[1] As of June 29, 2006, the outstanding balance of the student loan, including accrued interest, totaled $41,096.81.

1  debtor satisfied the good faith prong of the <u>Brunner</u> test, but failed to establish prongs one
2  and two.

3      On appeal, debtor first contends that the bankruptcy court erred in its application of
4  the first prong of the <u>Brunner</u> test by failing to counterbalance debtor's income with his
5  expenses, which he claims demonstrates, at least during the pendency of the Plan, that his
6  take-home income is roughly equal to his regular monthly expenses.  A debtor, however,
7  must demonstrate more than simply tight finances; the proper inquiry is whether it is
8  unconscionable to require debtor to earn more income or reduce expenses.  <u>Pennsylvania
9  Higher Educ. Assistance Agency v. Birrane (In re Birrane)</u>, 287 B.R. 490, 495 (B.A.P. 9th
10 Cir. 2002).

11      Contrary to debtor's argument, the bankruptcy court made detailed findings regarding
12 debtor's monthly income and expenses.  In particular, the court found that debtor's probation
13 terms require payment of a probation service fee, counseling and testing fees that total $204
14 to $260 per month.  A criminal fine of $17,000 is paid at approximately $140 per month.
15 Debtor has been employed as a paralegal/law clerk with a Phoenix law firm since July, 2003,
16 earning $25.00 an hour, with an annual income of $42,860.  He occasionally moonlights by
17 performing extra legal work and occasionally works as a disc jockey, earning $150 a night.
18 In addition, he has at least one tenant who pays $300 a month.  He is unmarried and has no
19 dependents.  In June 2002, debtor purchased a home for $109,000, financed $103,500 and
20 currently owes approximately $99,000.  It is estimated that the property has increased in
21 value to $147,000.  Additionally, debtor owns an automobile valued at $4,000.  Under the
22 Plan, debtor will pay a total of $26,850 over 60 months, with monthly payments starting at
23 $250 and increasing to $550.

24      The bankruptcy court considered all these facts in reaching its conclusion that debtor
25 failed to establish that he cannot maintain a minimal standard of living if forced to repay the
26 student loan.  At the time the Plan is completed in October 2008, debtor will be making Plan
27 payments of $550 a month.  He does not contend that his income is or will be insufficient to
28 satisfy these payments.  Once the Plan is completed, the monthly Plan expense will be

1  replaced with a roughly equivalent student loan payment of approximately $571.41 per
2  month.  Moreover, it is undisputed that under the Ford Program, debtor has the option to
3  extend the repayment terms of the student loan and thereby significantly reduce the monthly
4  payment to as low as $316.17.  Although debtor may not favor this option because it
5  increases the total amount of paid interest, it is nevertheless an option that would lessen the
6  impact of the loan payment on his monthly budget.  An aversion to paying interest is not a
7  factor in determining an inability to maintain a minimal standard of living.  The bankruptcy
8  court did not err in concluding that debtor failed to establish the first prong of the Brunner
9  test.

## III

11  Although failure to establish any one prong of the Brunner test properly results in a
12  finding of nondischargeability, the bankruptcy court also concluded that debtor failed to
13  establish the second prong of the test, which requires that a debtor "prove that [his] present
14  inability to pay will likely persist throughout a substantial portion of the loan's repayment
15  period." Educ. Credit Mgmt. Corp. v. Nys (In re Nys), 446 F.3d 938, 945 (9th Cir. 2006).
16  A presumption exists that "the debtor's income will increase to a point where [he] can make
17  payments and maintain a minimal standard of living."  Id. at 946.  The burden is on the
18  debtor to rebut that presumption "with 'additional circumstances' indicating that [his] income
19  cannot reasonably be expected to increase and that [his] inability to make payments will
20  likely persist throughout a substantial portion of the loan's repayment period."  Id.  Stated
21  differently, the debtor must show "insurmountable barriers to the debtor's financial recovery
22  and inability to pay." Id.

23  Here, the bankruptcy court found that debtor has no physical or mental disabilities that
24  impede his ability to work, and that despite his felony conviction depriving him of a law
25  license, he has succeeded in maintaining long-term employment as a paralegal utilizing his
26  legal education, and has acquired an appreciating real estate asset.  Furthermore, the court
27  considered "promising" debtor's plan to apply for readmission to the bar and again become
28  a practicing attorney.  Bankr. Order at 9.  Debtor now describes his prospects for readmission

to the bar as "dim for the foreseeable future," and accordingly characterizes the bankruptcy court's conclusion as "unreasonable and not supported by the record." Debtor's Opening Brief. at 9-10. Instead, he relies solely on the stigma of his criminal conviction and his own testimony that his income is "flat" as indicia of "additional circumstances" that will prolong his inability to repay the loan in the future.

This showing is insufficient to satisfy debtor's burden of proof, particularly given facts which demonstrate an improved financial position, both in terms of increased income and equity, notwithstanding debtor's felony conviction. The bankruptcy court did not err in concluding that debtor failed to satisfy the second prong of the Brunner test.

**IV**

Based on the foregoing, **IT IS ORDERED AFFIRMING** the judgment of the bankruptcy court.

DATED this 15th day of August, 2006.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge